IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Richard Newman Salem, | No. CV-12-8010-PCT-PGR (LOA) |
| Petitioner, | **REPORT AND RECOMMENDATION** |
| vs. | |
| Charles L. Ryan, et al., | |
| Respondents. | |

This matter is before the Court on Petitioner's *pro se* Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (the "Petition") in which Petitioner challenges his criminal convictions imposed following a jury trial in Yavapai County, Arizona, Superior Court, Case No. CR 82006-0183. (Doc. 1)  Respondents have filed an Answer to Petition for Writ of Habeas Corpus (the "Answer") and Petitioner has filed a Traverse. (Docs. 12, 15)  As explained below, the undersigned Magistrate Judge recommends the Petition be denied.

**I. Background**

  **A. Trial and Sentencing**

   On March 10, 2006, the State of Arizona, by indictment, charged Petitioner with seven counts of Aggravated Assault against a peace officer, one count of Resisting Arrest and one count of Criminal Trespass. (Doc. 12, Exh. A)  The State subsequently filed an allegation of dangerousness to the first three aggravated assault counts, alleging they involved the discharge, use, or threatening exhibition of a deadly weapon or dangerous instrument. (*Id.*)

1   Following a jury trial[1] that began on February 21, 2007, the jury found Petitioner guilty of

2   all charges. (Doc. 12, Exh. A at 113, Exh. W)  On April 17, 2007, the trial court sentenced

3   Petitioner to prison terms of ten and a half years each on the first three counts and lesser

4   terms on the remaining counts, all to run concurrently. (Doc. 12, Exh. X)

5   **B. Direct Review**

6   Petitioner sought direct review of his convictions. On December 27, 2007, Petitioner,

7   through counsel, filed an Opening Brief in the Arizona Court of Appeals, raising several

8   issues. (Doc. 12, Exh. B) After briefing was completed, the Court of Appeals issued a

9   Memorandum Decision on August 26, 2008, in which it affirmed Petitioner's convictions and

10  sentences. (Doc. 12, Exh. E) Petitioner subsequently filed a Petition for Review to the

11  Arizona Supreme Court on September 10, 2008. (Doc. 12, Exh. F) The Arizona Supreme

12  Court denied review without comment on January 7, 2009. (Doc. 12, Exh. H)

13  **C. State Post-Conviction Proceedings**

14  On January 28, 2009, Petitioner initiated State post-conviction proceedings by filing

15  a Notice of Post-Conviction Relief. (Doc. 12, Exh. I)  Through counsel, Petitioner then filed

16  a Petition for Post-Conviction Relief. (Doc. 12, Exh. J) After briefing was completed, the

17  trial court dismissed the petition, finding "[D]efendant has failed to present a colorable claim

18  for relief in his petition for post-conviction relief and that this matter is subject to dismissal

19  without further hearing." (Doc. 12, Exh. O)  Petitioner filed a Petition for Review in the

20  Arizona Court of Appeals, which was summarily denied on February 25, 2011. (Doc. 12,

21  Exh. R)  Petitioner did not seek review in the Arizona Supreme Court. (Doc. 1 at 5)

22  **D. Federal Habeas Petition**

23  On January 17, 2012, Petitioner filed this habeas petition in the District Court of

24  Arizona, alleging four grounds for relief. (Doc. 1)  In Ground One, Petitioner alleges he was

25  denied the right to effective assistance of counsel in violation of the Sixth and Fourteenth

26  Amendments when counsel failed to timely disclose two mental health professionals vital to

27

28

[1] The Honorable Thomas B. Lindberg presided over Petitioner's trial and sentencing.

his defense, resulting in the Court's preclusion of their testimony at trial. In Ground Two, Petitioner contends the decision by the Court of Appeals affirming the trial court's preclusion of a key witness based on untimely disclosure was contrary to, and an unreasonable application of, United States Supreme Court law and violating Petitioner's right to present a complete defense under the Sixth and Fourteenth Amendments. In Ground Three, Petitioner alleges he was deprived of the right to a fair and impartial jury under the Sixth Amendment. This claim is predicated upon statements made by a juror to Petitioner's counsel that, during deliberations, another juror was "rude" and "bullying" and claimed he was a former police officer even though he failed to disclose his prior employment during voir dire. In Ground Four, Petitioner alleges his attorney provided ineffective assistance of counsel in violation of the Sixth and Fourteenth Amendments by failing to move to vacate Petitioner's convictions based on juror misconduct. For relief, Petitioner requests an evidentiary hearing and the issuance of a writ of habeas corpus.

Respondents filed their Answer on June 7, 2012. (Docs. 12)  Petitioner then filed a Traverse and a supporting Memorandum of Points and Authorities on August 1, 2012. (Doc. 15, 17)

**E. Factual Summary**

In its Memorandum Decision, the Arizona Court of Appeals summarized the facts of the case as follows:

> In the early morning hours of March 4, 2006, three uniformed [Sedona Police Department ("SPD")] patrol officers responded to a call of a possible trespass being committed by J.R.'s ex-boyfriend (Appellant) at her home. J.R.'s mother, who owned the residence, was in a vehicle parked in front of the house when the officers arrived.[2]  M.T. was the first officer to arrive, and J.R.'s mother, who had already told Appellant to leave the property, informed M.T. that Appellant did not have permission to be on the property and "might be pretty drunk."
>
> Meanwhile, another officer, J.D., approached Appellant, who was standing by the front door, and twice requested that Appellant leave the

---

[2] J.R. had called her mother to tell her that Appellant was at the front door, and J.R. requested that her mother come to the home, ostensibly to persuade Appellant to leave. (footnote in original)

premises to talk with M.T. in the street. Appellant refused J.D.'s requests. M.T. then twice asked Appellant to come speak with him. Appellant refused, saying the police had no authority to order him off private property. M.T. ordered Appellant to leave the premises but Appellant again refused and thrust his hands in his pockets.

Concerned for the officers' safety, officers K.W. and M.T. approached Appellant and ordered him to remove his hands from his pockets. Appellant refused and instead clenched his fists. K.W. and M.T. each grabbed one of Appellant's arms, attempting to remove his hands from his pockets. Instead of complying, Appellant maintained his fists and twisted them, making them more difficult to remove.

A struggle ensued, and the officers pushed Appellant against a wall. J.D. was behind Appellant and instructed him to remove his hands from his pockets or he would be "tasered." J.D. "arc tested" his Taser in order for Appellant to hear the weapon and to induce compliance with the officers. Appellant continued to struggle, so J.D. "drive stunned"[3] Appellant on his back and told him that he was under arrest and to stop resisting.

Although the officers succeeded in removing Appellant's hands from his pockets, Appellant fell to the ground with the officers and began "throwing punches," "flailing," "kicking," and "struggling." Appellant struck J.D. in the throat and threatened to kill him. M.T. cuffed one of Appellant's wrists, but Appellant swung the cuff arm, causing the loose handcuff to strike M.T. in the head.

At some point during the struggle on the ground, Appellant grabbed K.W.'s holstered handgun and attempted to lift it out of the holster. In response, K.W. and M.T. pushed Appellant's hand on the gun to keep the weapon holstered. K.W. yelled for someone to shoot Appellant because Appellant had his firearm. M.T. dislodged Appellant's grip on the gun before any shots were fired.

The struggle continued, and J.D. again used his Taser to drive stun Appellant on his back. The officers eventually subdued Appellant, tied his bound hands and feet together, and transported him to the SPD's booking area. K.W. sustained abrasions to his knee and hand as a result of the scuffle with Appellant.

(Doc. 12, Exh. E at 2-4)

## II. Discussion

Respondents argue in the Answer that Petitioner's claims fail on their merits. Respondents contend the State courts' resolution of each of the claims was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent or based on

---

[3] In drive stun mode, the cartridge containing the "darts" is removed so that the Taser can be directly applied to a target. (footnote in original)

an unreasonable determination of the facts. As a result, Respondents contend the Petition should be denied and dismissed with prejudice.

### A. Standard of Review

This Court's review of Petitioner's claims is constrained by the standard of review set forth in 28 U.S.C. § 2254(d), as amended in 1996 by the Antiterrorism and Effective Death Penalty Act ("AEDPA").[4]  The ADEPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under the law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). The standard in § 2254(d) is "meant to be" "difficult to meet." *Harrington v. Richter*, 562 U.S. ___ , 131 S.Ct. 770, 786 (2011). The statute "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state court proceedings," and "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Id*. (citations omitted). "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunction in the state criminal justice systems,' not a substitute for ordinary error correction through appeal."  *Id*. (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979)).

"[W]ith respect to any claim that was adjudicated on the merits in State court proceedings," a federal court "shall not" grant habeas relief unless the state court's decision "was contrary to or involved an unreasonable application of, clearly established Federal law, as determined by the United States Supreme Court," or the decision "was based on an unreasonable determination of the facts" in light of the record before the state court. 28 U.S.C. § 2254(d)(1), (2); *Green v. Fisher*, __ U.S.__, 132 S.Ct. 38, 43 (2011). As discussed above, this is a "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S.

---

[4] The AEDPA, which was signed into law on April 24, 1996, governs federal habeas petitions filed after the date of its enactment. *Lindh v. Murphy*, 521 U.S. 320, 326-327 (1997).

19, 24 (2002) (*per curiam*) (citation and internal quotation omitted). The petitioner bears the burden of proving the standards for habeas relief have been met. *Id*. at 25. When applying the standards set forth in § 2254(d), the federal court should review the "last reasoned decision" by the state court. *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004).

To determine whether a state court ruling was "contrary to" or involved an "unreasonable application" of federal law, federal courts look exclusively to the holdings of the Supreme Court which existed at the time of the state court's decision. *Richter*, 131 S.Ct. at 786 (citing *Renico v. Lett*, 559 U.S. 766, 130 S.Ct. 1855, 1866 (2010)). The Ninth Circuit has acknowledged that it cannot reverse a state court decision merely because that decision conflicts with Ninth Circuit precedent on a federal constitutional issue. *Brewer v. Hall*, 378 F.3d 952, 957 (9th Cir. 2004); *Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003). Even if the state court neither explains its ruling nor cites United States Supreme Court authority, the reviewing federal court must nevertheless examine Supreme Court precedent to determine whether the state court reasonably applied federal law. *Richter*, 131 S.Ct. at 784 (citing *Early v. Packer*, 537 U.S. 3, 8 (2003)). Compliance with the habeas statute "does not even require awareness of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *Richter*, 131 S.Ct. at 784. "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state to deny relief." *Richter*, 131 S.Ct. at 784.

Under § 2254(d), a state court's decision is "contrary to" clearly established federal law if it applies a rule of law "that contradicts the governing law set forth in [Supreme Court] cases or if it confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent." *Mitchell v. Esparza*, 540 U.S 12, 15-16 (2003) (citations omitted); *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000). A state court decision involves an "unreasonable application of" federal law if the court identifies the correct legal rule, but unreasonably applies that rule to the facts of a particular case. *Brown v. Payton*, 544 U.S. 133, 141 (2005);

*Williams*, 529 U.S. at 407-408. This standard requires more than merely an incorrect application of federal law. *Yarborough v. Alvarado*, 541 U.S. 652, 665-66 (2004) (stating that "[r]elief is available under § 2254(d)(1) only if the state court's decision is objectively unreasonable."). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree on the correctness of the state court's decision.'" *Richter*, 131 S.Ct. at 786 (citing *Yarborough*, 541 U.S. at 664). "'[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determination.'" *Id.* This Magistrate Judge will consider Petitioner's claims in view of the foregoing standards.

### B. Analysis

#### 1. Ground One

Petitioner alleges in Ground One he was denied the right to effective assistance of counsel in violation of the Sixth and Fourteenth Amendments when his attorney failed to timely disclose two mental health professionals vital to his defense, resulting in the trial court's preclusion of their testimony at trial. He further contends his attorney failed to make an appropriate offer of proof or request an evidentiary hearing to demonstrate the importance of their testimony.

##### a. Legal Standards for Ineffective Assistance of Counsel

The controlling Supreme Court precedent on claims of ineffective assistance of counsel is *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a convicted defendant must show that counsel's performance was objectively deficient and counsel's deficient performance prejudiced the petitioner. *Id.* at 687. To be deficient, counsel's performance must fall "outside the wide range of professionally competent assistance." *Id.* at 690. When reviewing counsel's performance, the court engages a strong presumption that counsel rendered adequate assistance and exercised reasonable professional judgment. *Id.* "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged

conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. Review of counsel's performance is "extremely limited." *Coleman v. Calderon*, 150 F.3d 1105, 1113 (9th Cir. 1998), *rev'd on other grounds*, 525 U.S. 141 (1998). Acts or omissions that "might be considered sound trial strategy" do not constitute ineffective assistance of counsel. *Strickland*, 466 U.S. at 689.

In addition to showing counsel's deficient performance, a petitioner must establish that he suffered prejudice as a result of that deficient performance. *Id.* at 691-92. To show prejudice, a petitioner must demonstrate a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694; *Hart v. Gomez*, 174 F.3d 1067, 1069 (9th Cir. 1999); *Ortiz v. Stewart*, 149 F.3d 923, 934 (9th Cir. 1998). The prejudice component "focuses on the question whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). It is not enough to merely show "that the errors had some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693.

A habeas court may proceed directly to the prejudice prong without deciding whether counsel's performance was deficient. *Strickland*, 466 U.S. at 697; *Jackson v. Calderon*, 211 F.3d 1148, 1155 n.3 (9th Cir. 2000) (citing *Strickland*). The court, however, may not assume prejudice solely from counsel's allegedly deficient performance. *Jackson*, 211 F.3d at 1155.

In the context of a habeas petition, a petitioner must do more than demonstrate to the federal court that the state court applied *Strickland* incorrectly. *Bell*, 535 U.S. at 698-99. Rather, a petitioner must show the state court "applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Id.* Because the standards created by *Strickland* and § 2254(d) are both "highly deferential," review under both standards in tandem is even more deferential. *Richter*, 131 S. Ct. at 788 (citations omitted). "[T]he question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.*

### b. Application

In support of his claim in Ground One, Petitioner explains that his retained trial counsel, Robert Earle, entered his appearance in the case on July 31, 2006 and soon thereafter gave notice he intended to raise, *inter alia*, lack of intent and lack of voluntary act as defenses. (Doc. 1 at 13) Petitioner contends that although the trial date of February 21, 2007 had been set since November 2006, Earle failed to disclose three mental health witnesses vital to his defense until February 7, 2007, just two weeks before trial. The State moved to exclude the three witnesses, Patricia Paine, Elizabeth Large and Marion Diamond, based on the untimely disclosure. The trial court granted the motion as to Patricia Paine and Elizabeth Large, finding their testimony was "cumulative and not vital to the criminal case, which pertains to events at the time of arrest. The timely-disclosed witnesses contain persons testifying as to pertinent character traits already." (Doc. 12, Exh. A at 89) The motion was denied as to Ms. Diamond and she was permitted to testify.

Petitioner argues his counsel was aware from their earliest meetings that Petitioner had a well-documented history of panic and anxiety disorders which, according to Petitioner, "were the cause of his freeze response on the night at issue . . . ." (Doc. 1 at 13)  Petitioner contends Ms. Paine was a Masters level psychotherapist and trauma specialist who was an expert on panic and anxiety disorders. He claims Ms. Paine had supplied counsel, months in advance, a letter explaining her treatment and opinion regarding the voluntariness of Petitioner's actions on the night at issue.[5] Petitioner further contends Dr. Large, a

---

[5] Ms. Paine testified at Petitioner's pre-sentence hearing. (Doc. 12, Exh. V at 34-48) During her testimony, Ms. Pained provided the following opinion:

> Based on my regular and on-going treatment of Mr. Salem, it is my professional opinion, in light to [sic] the circumstances Richard faced on the evening of his encounter with the Sedona Police, that his response was not one of defiance or noncooperation, but rather a typical response of a person in a state of fear, panic and freeze. This assessment stands firmly based on his history and predisposition to panic, anxiety, and acute stress reactions.
>
> * * *
>
> In the presence of the police, Mr. Salem appears to have been unable to assess

naturopathic physician, knew him for ten years and was intimately familiar with his history of panic and anxiety disorders. (Doc. 1 at 14)  Petitioner claims Dr. Large had also informed Petitioner's counsel months in advance that she would testify Petitioner's actions were the result of a panic attack, and were unintentional and involuntary.[6]

Petitioner further argues the untimely witness disclosure his lawyer filed two weeks before trial failed to properly explain the subject of these two witnesses' testimony. (Doc. 1 at 14)  In addition, when responding to the State's motion to exclude these witnesses due to the untimely disclosure, Petitioner claims his counsel failed to address the content of their testimony and its importance to the defense. Petitioner claims his counsel instead argued an interpretation of the disclosure rules that was rejected. Petitioner claims that, without the testimony of Ms. Paine and Dr. Large, the State could credibly argue that there was no panic disorder in this case. He argues that as a result of his counsel's actions, his primary defense at trial was unsupported by any testimony other than his own.

Petitioner claims his trial counsel's incompetence regarding the disclosure of these witnesses undermines the validity of his convictions. (Doc. 1 at 14-15)  He further contends the State courts made an unreasonable determination of the facts when they failed to make any factual findings on this issue or hold an evidentiary hearing.

Petitioner raised this ineffective assistance claim in his Petition for Post-Conviction Relief. (Doc. 12, Exh. J) The trial court, after summarizing the procedural history of the case and stating it had reviewed all the post-conviction materials submitted, found Petitioner

_____

his situation, emotionally or intellectually, and act appropriately. That evening I believe Mr. Salem's autonomic nervous system was overwhelmed; he became dazed and then resisted.

(Doc. 12, Exh. V at 36-37)

[6] Dr. Large also testified at the pre-sentence hearing. (Doc. 12, Exh. V at 64-77) She testified she had a romantic relationship with Petitioner and lived with him for a period of time. (*Id.* at 76) She further testified she witnessed Petitioner have panic attacks in the past and she believed all the factors on the evening of the incident combined to create a "panic response" by Petitioner. (*Id.* at 73-74)

1   "failed to present a colorable claim for relief" and dismissed the petition without further

2   hearing. (Doc. 12, Exh. O) Similarly, after Petitioner raised the claim in his Petition for

3   Review, the Arizona Court of Appeals denied review without comment. (Doc. 12, Exh. R)

4          As noted above, "[w]here a state court's decision is unaccompanied by an explanation,

5   the habeas petitioner's burden still must be met by showing there was no reasonable basis

6   for the state to deny relief." *Richter*, 131 S. Ct. at 784.  For the reasons that follow, the Court

7   finds Petitioner has failed to meet the high standard for habeas relief.

8          Rather than deciding whether trial counsel's actions regarding the untimely disclosure

9   of  Ms. Paine and Dr. Large constituted deficient performance, the Court instead turns to the

10  issue of prejudice. *See Jackson,* 211 F.3d at 1155 n.3 (citing *Strickland*, 466 U.S. at 697)

11  (stating that, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of

12  sufficient prejudice, which we expect will often be so, that course should be followed."). As

13  Petitioner acknowledges, despite the late disclosure, the trial court denied the State's motion

14  to exclude Marian Diamond, F.N.P., his treating nurse practitioner. Ms. Diamond testified

15  at trial she has a master's degree in nursing, is board certified as a family nurse practitioner,

16  is authorized to make diagnoses, write prescriptions, order x-rays and "[b]asically [do] what

17  a family practice physician might be doing. Same things." (Doc. 12, Exh. U at 20-23)  Nurse

18  Diamond testified she began treating Petitioner in October 2004, and, in January 2006, she

19  prescribed Paxil for depression and Lorazepam for anxiety-related symptoms. (*Id*. at 24-25)

20  In March of 2006, just a few days after the incident at issue, she prescribed Clonazepam, also

21  an anti-anxiety medication, in place of the Lorazepam. (*Id.*) Nurse Diamond testified that

22  during her treatment of Petitioner, including the period of time before the date of the incident,

23  Petitioner suffered from panic disorders and anxiety. (*Id.* at 25) Ms. Diamond testified that,

24  during a panic attack, it is "difficult to make decisions and proceed forward because of

25  anxiety. It freezes people, generally." (*Id.* at 27)  When asked to explain "freezes," Nurse

26  Diamond testified that "they have a tendency to not be able to cope with situations and

27  sometimes they, you know, want to leave the situation, get out of whatever caused them to

28  have their panic attack." (*Id.*) She further testified that in Petitioner's case, it affected his

1   ability to reason fully. (*Id.*)

2       In addition, Petitioner testified at trial he had received treatment for 15 years for

3   anxiety and panic disorders from psychiatrists and other health care providers. (Doc. 12, Exh.

4   U at 214-215) Petitioner described some of his symptoms during a panic attack, including

5   dizziness, confusion, murmuring sound in the ears, eye movements, heart palpitations,

6   breathing difficulties, sweaty palms, and feeling a need to get out of a room. (*Id.* at 216-217)

7   He also said his thinking process was affected and it was hard to reason. (*Id.* at 217)  When

8   asked if he was having a panic attack when one of the police officers approached him as he

9   was standing on the front porch of his ex-girlfriend's house, Petitioner testified, "I do believe

10  there I was, yes sir." (*Id.*)  Petitioner further testified that he refused the officer's directive

11  to get off the porch and go around a corner because he was "terrified," "overwhelmed," and

12  "felt frozen and unable to respond to such an approach." (*Id.* at 214)  Petitioner also testified

13  he was feeling a sense of terror when another officer directed Petitioner to come over and

14  talk to him, and that, after he was pushed up against a wall and shot with a Taser, he

15  experienced "[c]omplete overwhelmingness [sic], sheer terror, panic" and felt he was being

16  beaten up. (*Id.* at 219-220, 224)

17      Nevertheless, much of Petitioner's testimony regarding the incident was not consistent

18  with feeling "frozen," "overwhelmed" or in the midst of a panic attack. When Petitioner's

19  ex-girlfriend's mother drove to the house and yelled to Petitioner that he needed to leave,

20  Petitioner, claiming he did not recognize her, refused to leave. (Doc. 12, Exh. U at 207-209)

21  Similarly, when the first police officer approached Petitioner on the porch and told him to

22  go around a corner, Petitioner testified that he said, "No. Tell me what's going on." (*Id.* at

23  214). When another officer was 10 or 15 feet away from the porch told Petitioner to come

24  over and talk to him, Petitioner said, "[N]o. You don't have the authority." (*Id.* at 219-220)

25  Petitioner never testified he felt dizzy or confused; had a murmuring sound in his ears, eye

26  movements, heart palpitations, or breathing difficulties; or experienced sweaty palms during

27  the incident - all symptoms he claimed he typically experienced during a panic attack.

28  Moreover, Petitioner's testimony regarding the incident reflects that he remembered in great

1   detail what the officers said and did, and what he said and did, which further suggests he was

2   fully conscious of his actions. (*Id.* at 212-248) Petitioner's own testimony regarding his

3   demeanor and his actions provides little support for his contention that he was in the throes

4   of a panic attack and unable to comply with the police officers' directives, and his actions

5   were involuntary.

6        As the above testimony demonstrates, both Nurse Diamond and Petitioner testified

7   about his history of anxiety and panic attacks. Petitioner further testified he was experiencing

8   a panic attack during the confrontation with the Sedona police officers. Moreover, as

9   Petitioner concedes, his attorney argued during closing that Petitioner's "reaction to the

10  police was a panic attack and that his conduct was involuntary and he was not acting

11  consciously." (Doc. 17 at 16) Thus, the question of whether Petitioner's anxiety prevented

12  him from forming the requisite intent to commit the offenses for which he was convicted was

13  clearly before the jury and a jury question. In this Magistrate Judge's view, Petitioner's

14  detailed testimony of the incident undermines his claim that his actions were involuntary and

15  not conscious. Accordingly, the undersigned is not convinced there is a reasonable

16  probability that, but for counsel's failure to properly disclose Ms. Paine and Dr. Large, the

17  result of the jury trial would have been different. Their excluded testimony would not have

18  changed what the jury heard from Petitioner himself about what occurred.

19       Moreover, as noted above, the standard in a habeas case requires a court to go beyond

20  a *de novo* application of *Strickland* and find that the state courts' denial of Petitioner's claim

21  was objectively unreasonable. *See Bell v. Cone*, 535 U.S. at 698-99. As this discussion

22  demonstrates, there is a reasonable basis to conclude the prejudice prong of *Strickland* was

23  not satisfied. For these reasons, the Court finds Petitioner has not shown that the State courts'

24  rejection of his ineffective assistance of counsel claim pertaining to the untimely disclosure

25  of two witnesses was contrary to, or an unreasonable application of, *Strickland*, or that it was

26  based on an unreasonable determination of the facts in light of the state court record. *See* 28

27  U.S.C. § 2254(d). This Magistrate Judge will, therefore, recommend that the claim in Ground

28  One be denied.

**2. Ground Two**

Petitioner next alleges the decision by the Arizona Court of Appeals to uphold the trial court's exclusion of Ms. Paine as a witness based on defense counsel's untimely disclosure was contrary to and an unreasonable application of United States Supreme Court law and violated Petitioner's right to present a complete defense under the Sixth and Fourteenth Amendments. (Doc. 1 at 15) Petitioner contends the trial court imposed the harshest sanction for the late disclosure – preclusion – even though it had received sufficient information to conclude the witness was vital to Petitioner's defense. Petitioner claims the trial court erroneously concluded the testimony was not vital to the case.[7] Petitioner argues Ms. Paine "was the only mental health professional named in the disclosure, and the only witness who would testify as to the trauma Petitioner experienced as a result of the conduct of the police officers (as opposed to a result of his own mental health conditions)." (emphasis in original) Petitioner claims his primary defense at trial was that he suffered a panic attack and acted reflexively when he was "grabbed by three officers, beaten and stunned." He argues Ms. Paine's testimony was necessary to support that defense.

In the Traverse, Petitioner asserts the Arizona Court of Appeals, in upholding the trial court's decision, relied on three State court cases and did not cite any United States Supreme Court authority. (*Id.* at 18) Petitioner argues, however, that the Court of Appeals decision was contrary to the Supreme Court's holdings in *Taylor v. Illinois*, 484 U.S. 400, 414 (1988) and *Chambers v. Mississippi*, 410 U.S. 284, 294 (1973). Petitioner further claims the Court of Appeals made an unreasonable determination of the facts when it upheld the trial court's preclusion of Ms. Paine's testimony. He contends that because Ms. Paine was identified in the disclosure as a "mental health practitioner," it was unreasonable to exclude her given Petitioner's defense at trial.

---

[7] Petitioner further explains in the Traverse that the trial court justified its decision to exclude Ms. Paine as a witness by finding the late disclosure was done intentionally by defense counsel in retaliation for the State's untimely disclosures, and thus was done in bad faith. (Doc. 17 at17)

In *Taylor*, the Supreme Court addressed whether precluding an undisclosed witness from testifying as a discovery sanction violated the petitioner's Sixth Amendment right to obtain the testimony of favorable witnesses. *Taylor*, 484 U.S. at 401-402. The Court held that "such a sanction is not absolutely prohibited by the Compulsory Process Clause of the Sixth Amendment . . . ." *Id.* at 402 The Court explained:

> In order to reject petitioner's argument that preclusion is *never* a permissible sanction for a discovery violation it is neither necessary nor appropriate for us to attempt to draft a comprehensive set of standards to guide the exercise of discretion in every possible case. It is elementary, of course, that a trial court may not ignore the fundamental character of the defendant's right to offer the testimony of witnesses in his favor. But the mere invocation of that right cannot automatically and invariably outweigh countervailing public interests. The integrity of the adversary process, which depends both on the presentation of reliable evidence and the rejection of unreliable evidence, the interest in the fair and efficient administration of justice, and the potential prejudice to the truth-determining function of the trial process must also weigh in the balance. (footnote omitted)

*Taylor*, 484 U.S. at 414-415.

Although Petitioner also cites *Chambers v. Mississippi*, 410 U.S. 284 (1973), as clearly established Supreme Court law on this issue, the undersigned disagrees and finds that *Taylor* more directly represents the controlling precedent on this issue. In *Chambers*, the Supreme Court held that the trial court's exclusion on hearsay grounds of witnesses to whom someone other than the defendant confessed to the murder at issue violated the defendant's right to due process. *Chambers*, 410 U.S. at 298-302. Here, the trial court's exclusion of Ms. Paine's testimony was a discovery sanction and had nothing to do with hearsay concerns. Because the decision in *Taylor* addresses exclusion of witnesses as a discovery sanction, it is on point with the circumstances of this case and, accordingly, constitutes clearly established Supreme Court precedent on the issue presented. This Magistrate Judge, therefore, will consider whether the Court of Appeals decision was contrary to, or an unreasonable application of *Taylor*.

In upholding the trial court's decision to preclude Ms. Paine's testimony, the Court of Appeals explained:[8]

---

[8] "P.P." in the Court of Appeals decision is Patricia Paine. "E.L." is Elizabeth Large.

Here, the trial court properly concluded that the untimely disclosed witnesses, P.P. and E.L., were not vital to Appellant's case.  P.P. was, as disclosed by Appellant, a mental health practitioner who treated Appellant "for the trauma he experienced as a result of the conduct of the police officers." She was also expected to testify about the effects of being tasered.  Appellant offered E.L. as a character witness and to possibly testify about the effects of being tasered.  However, Appellant properly disclosed four other character witnesses, and the trial court did not preclude the testimony of Appellant's untimely disclosed Taser expert — who, as did Appellant, testified about the effects of being tasered — or the untimely disclosed witness testimony of the nurse practitioner who treated Appellant after the incident. The trial court accordingly correctly concluded that P.P.'s and E.L.'s proffered testimony was cumulative and therefore not vital to Appellant's case.[9] *Cf Smith*, 140 Ariz. at 359, 681 P.2d at 1378 (holding that a precluded witness was vital to the defendant's case because his testimony could have been more persuasive due to a lack of motive for bias than similar non-precluded testimony).

The trial court also properly concluded that the State was surprised by the late disclosure of P.P. and E.L.  We find nothing in the record indicating the State was aware of those witnesses before Appellant's February 7, 2007 disclosure.  *Cf. id.* (noting that the State was aware of a witness's existence before trial as well as the defendant's alibi defense). The trial court also properly concluded that Appellant's discovery violation was likely motivated by bad faith based on his stated rationale for the late disclosure; namely, retaliation against the State for its own purportedly dilatory discovery tactics. Finally, we discern nothing improper about the court's consideration of Appellant's untimely response to the State's motion to preclude as another relevant circumstance weighing in favor of preclusion. (footnote omitted) Accordingly, we find no error in precluding P.P. and E.L. from testifying.

(Doc. 12, Exh. E at 11-12)

The Court of Appeals decision relied on two Arizona cases, one of which cited *Taylor,* for its discussion of whether a witness could be precluded from testifying as a discovery sanction. (Doc. 12, Exh. E at 11) (citing *State v. Smith*, 140 Ariz. 355, 359, 681 P.2d 1374, 1378 (Ariz. 1984) and *State v. Delgado*, 174 Ariz. 252, 257, 848 P.2d 337, 342 (Az.Ct.App. 1993)). Pursuant to those cases, the trial court must consider four factors when determining whether to order preclusion of a witness as a sanction: (1) the importance of the witness to the case; (2) whether the opposing party will be surprised; (3) whether the discovery violation was motivated by bad faith; and (4) any other relevant circumstances. (*Id.*)

---

[9] Appellant essentially argued at trial that the physical struggle was a manifestation of an involuntary "fight or flight" response to being tasered and otherwise being subjected to pain. He also argued that his failure to obey the police officers was due to a "panic attack." (footnote in original)

This Magistrate Judge finds the Arizona Court of Appeals decision applying the factors in *State v. Smith* and *State v. Delgado*, and upholding the trial court's decision to preclude Ms. Paine from testifying, is not contrary to, or an unreasonable application of, the Supreme Court's holding in *Taylor*. The Supreme Court in *Taylor* made clear that preclusion of a witness may be an appropriate discovery sanction in certain circumstances without violating the Sixth Amendment. Here, the Court of Appeals, after considering the relevant factors, determined that such a sanction was warranted with respect to Ms. Paine. The analysis was consistent with the balancing-of-factors approach suggested by the Supreme Court in the *Taylor* decision. Accordingly, having determined that Petitioner's claim in Ground Two fails to satisfy the standard for habeas relief, this Magistrate Judge will recommend that Ground Two be denied.

### 3. Ground Three

Next, Petitioner alleges he was deprived of the right to a fair and impartial jury in violation of the Sixth Amendment. (Doc. 1 at 17)  Petitioner asserts a female juror in his case, Carol Del Grande, was present at his sentencing hearing and told Petitioner's attorney she had important information to discuss with him. When Petitioner's counsel asked for a meeting in chambers to address the matter, the trial judge denied the request and proceeded with the sentencing. Petitioner claims Del Grande spoke with defense counsel after the sentencing hearing and told him one of the other jurors was rude, bullying and claimed to be a former police officer. Del Grande also spoke to Petitioner's girlfriend and told her she believed Petitioner was innocent, but she gave into pressure from another juror, who claimed to be a former police officer, to vote guilty.

Petitioner further contends that during *voir dire*, the trial judge asked whether anyone on the jury panel had ever served as a law enforcement officer. (Doc. 1 at 17) He claims anyone who indicated they were currently or formerly employed in law enforcement was either removed for cause or through a peremptory strike.

Petitioner explains that during post-conviction proceedings, his trial counsel and girlfriend both submitted affidavits attesting to what Del Grande told them. Petitioner claims

that based on the affidavits, the trial court allowed Petitioner to interview the jurors and, during Del Grande's interview with Petitioner's investigator, she reiterated her earlier statements. Petitioner contends the trial court erred when, despite this evidence, it summarily dismissed his post-conviction petition without explanation or an evidentiary hearing.

Petitioner cites two United States Supreme Court cases in support of his claim that his right to a fair and impartial jury was violated, *Smith v. Phillips*, 455 U.S. 209 (1982) and *Irwin v. Dowd*, 366 U.S. 717 (1961). Although he does not explicitly say it, the undersigned assumes Petitioner is arguing the State courts' rulings on post-conviction relief, which is when he first raised this issue, are contrary to, or an unreasonable application of, *Smith* and *Irwin*.

In his Traverse, Petitioner further argues the affidavits by his trial counsel and girlfriend demonstrate "that one of the jurors who deliberated on this case was not truthful and concealed the fact that he had previously been a police officer." (Doc. 17 at 21) Petitioner concedes the trial court, during post-conviction proceedings, granted his request for the appointment of an investigator to interview jurors. He contends "[t]he investigation yielded clear reports consistent with juror Del Grande's statements at sentencing, with respect to her being bullied by a juror who claimed to be a cop, or ex-cop." (Doc. 17 at 22) Petitioner asserts the trial court, despite this information, summarily dismissed his post-conviction petition "without holding an evidentiary hearing on the investigation it ordered, or offering any analysis of the investigations' findings, or anything else for that matter." (*Id.*)

"[T]he right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial, 'indifferent' jurors." *Irwin*, 366 U.S. at 722.  Such a right is a basic requirement of due process. *Id.* "Due process means a jury capable and willing to decide the case solely on the evidence before it . . . ." *Smith*, 455 U.S. at 217. Where a petitioner claims a juror failed to disclose during *voir dire* information relevant to bias or prejudice, the petitioner "must first demonstrate that [the] juror failed to answer honestly a material question on *voir dire*, and then further show that a correct response would have provided a valid basis for a challenge for cause." *McDonough Power Equipment, Inc. v. Greenwood*, 464 U.S. 548, 556

(1984).

In the affidavit from Petitioner's trial counsel attached to his post-conviction petition, counsel said that when he met with Del Grande after the sentencing, she contended one of the jurors, during deliberations, "claimed to have been a police officer." (Doc. 12, Exh. J) According to counsel, Del Grande provided him a physical description of the juror and said he "frequently yelled and waved his arms, and essentially took over the conduct of deliberations." (*Id.*)

In the affidavit by Petitioner's girlfriend, Jean Ellen Strauch, also attached to the post-conviction petition, Strauch said she spoke to Del Grande by phone after the sentencing hearing. (Doc. 12, Exh. J) Strauch stated Del Grande told her she felt heavy pressure to vote guilty on the charges against Petitioner and that the pressure had been exerted primarily by one juror who said he used to be a cop. (*Id.*)

Also in the state post-conviction proceedings, Petitioner filed a Factual Supplement to Petition for Post-Conviction Relief with Supporting Exhibit that contained a transcript of an interview Petition's appointed investigator conducted with Del Grande. (Doc. 12, Exh. K) During the interview, Del Grande said she thought Petitioner "was not guilty for all that, and you know the rest of the people didn't agree with me." (*Id.* at 1) When asked whether the juror who claimed to be a police officer, whose name she could not remember, helped sway things, she said, "Well it didn't sway things with me . . . ." (*Id.* at 2) She said, however, he was yelling at her and saying he was a policeman. (*Id.*) She also said that another juror she regularly talked to during the trial said he did not remember hearing another juror say he was a police officer. (*Id.*) Del Grande said she didn't remember whether the juror said he was a current or former police officer. (*Id.* at 9) She said everyone stared at him when he said it, but nobody said anything about it. (*Id.*)

Del Grande also stated she was not pressured during deliberations, no threats were made, and she made her own decision. (*Id.* at 4, 11, 13 and 14) She claimed, however, the juror who said he was a police officer was rude to her because she didn't feel Petitioner was guilty of all the charges, and he said she didn't understand what was going on. (*Id.* at 9, 12)

1   Importantly, Del Grande told the investigator that, when she spoke to Petitioner's counsel

2   at the sentencing, Del Grande told him she would not testify to these matters. (*Id.* at 4-5)

3   The investigator stated during his interview with Del Grande that all of the jurors were

4   being contacted to determine whether something happened during deliberations. (*Id.* at 1)

5   Petitioner, however, presented to the trial court only the affidavits from his girlfriend and

6   lawyer and the Del Grande interview transcript in support of his juror misconduct claim that

7   one of the jurors failed to disclose he was a law enforcement officer and was not impartial.

8   He presented nothing else regarding the investigator's findings, including whether any other

9   juror was interviewed, and if so, what they said regarding Del Grande's contentions.

10   Moreover, contrary to Petitioner's assertions, and as the State pointed out in its

11   Response to Defendant's Petition and Supplement for Post-Conviction Relief, a panel

12   member who became one of the twelve jurors said during *voir dire* that he was in the military

13   police during the Korean War. (Doc. 12, Exh. M at 8; W at 34)  It is not clear from the record

14   whether this is the same juror who, according to Del Grande, claimed during deliberations

15   he was a police officer. This information undercuts, however, Petitioner's arguments made

16   during the post-conviction proceedings and in the instant Petition that any juror who

17   indicated they were currently or formerly employed in law enforcement was removed either

18   for cause or through a peremptory strike. (*See* Doc. 12, Exh. J at 7; Doc. 1 at 17)

19   Based on the information before the trial court in post-conviction proceedings, and

20   subsequently before the Arizona Court of Appeals on a petition for review, this Court finds

21   no basis to conclude that the State courts' decisions were contrary to, or an unreasonable

22   application of, *Smith*, *Irwin* or *McDonough Power Equipment, Inc.*[10]  It was not objectively

23   unreasonable for either State court to conclude that Petitioner's evidence failed to

24   demonstrate a juror "failed to answer honestly a material question on *voir dire*, and then

25

26   ──────────────

27   [10] Typically, the district court on federal habeas review considers the "last reasoned decision" by the state court. *Robinson*, 360 F.3d at 1055. Here, because the trial court and

28   the Court of Appeals denied Petitioner's post-conviction claims without explanation, this Court considers both decisions.

further show that a correct response would have provided a valid basis for a challenge for cause." *See McDonough Power Equipment, Inc.*, 464 U.S. at 556. Despite the trial court's authorization for Petitioner to interview all the jurors through an investigator, Petitioner only presented information from one juror, Del Grande. That suggests to this Court, and likely suggested to the State courts as well, that none of the other information obtained by the investigator was helpful to Petitioner. Petitioner's silence regarding whether other jurors were interviewed further supports such a conclusion.

Moreover, Del Grande's statements to the investigator suggested uncertainty. She could not remember whether the juror claimed to be a current or former law enforcement officer. If he was a former military police officer many years ago, that would be consistent with the answer during *voir dire* of the panel member who was then selected to sit on the jury. Additionally, according to Del Grande, the other juror with whom she was friendly did not remember hearing another juror claim to be a police officer. Without some corroboration by other jurors and stronger evidence that this juror failed to answer honestly a material question on *voir dire*, the undersigned finds Petitioner has failed to meet the high standard for habeas relief. Petitioner has not shown the decisions by the State courts on this issue were contrary to, or an unreasonable application of, *Smith*, *Irwin* or *McDonough Power Equipment, Inc.* For these reasons, the Court will recommend that Ground Three be denied.

### 4. Ground Four

Lastly, Petitioner alleges in Ground Four that his trial attorney provided ineffective assistance of counsel in violation of the Sixth and Fourteenth Amendments by failing to move to vacate Petitioner's convictions based on juror misconduct. (Doc. 1 at 18) Petitioner asserts his trial counsel filed an untimely motion for a new trial after the trial, and a motion to vacate judgment after the sentencing. He contends his lawyer failed to raise the issue of juror misconduct in either motion. He argues his trial lawyer's failure to raise the issue at that time, when all the jurors were available and the trial was fresh in their minds, constitutes deficient performance. He further argues his lawyer's deficient performance caused prejudice because a hearing on the issue likely would have resulted in the trial judge's setting aside the

1    guilty verdicts. Petitioner cites *Strickland* in support of his claim.

2           In the Traverse, Petitioner argues his trial counsel should have done more than merely

3    ask for a meeting in chambers after Del Grande spoke to counsel at the sentencing. (Doc. 17

4    at 23) When that was denied, Petitioner contends, counsel failed to do anything more such

5    as ask for a continuance, file a motion to dismiss, or request an evidentiary hearing.

6    Petitioner argues his counsel just ignored the issue, moved forward with sentencing, and then

7    failed to raise it in the two post-trial motions he filed. Petitioner claims the State courts'

8    decisions regarding this claim in post-conviction proceedings were an unreasonable

9    application of *Strickland*.

10          In considering this claim, the Court first addresses the issue of prejudice. *See Jackson,*

11   211 F.3d at 1155 n.3 (citing *Strickland*, 466 U.S. at 697) (stating that, "[i]f it is easier to

12   dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we

13   expect will often be so, that course should be followed."). In its analysis of Ground Three,

14   the undersigned summarized the evidence Petitioner presented to the trial court in support

15   of his claim of juror misconduct, and finds it unnecessary to repeat that information here. The

16   Court determined above that, absent some corroboration of Del Grande's contentions by

17   other jurors, along with stronger evidence that the juror who allegedly claimed to be a police

18   officer failed to answer honestly a material question on *voir dire*, Petitioner failed to meet

19   the high standard for habeas relief on his juror misconduct claim. In Ground Four, Petitioner

20   essentially argues that the same evidence is sufficient to satisfy the prejudice prong of

21   *Strickland*. This Magistrate Judge disagrees.

22          Petitioner's evidence before the trial court on post-conviction relief, including the

23   affidavits from his girlfriend and trial counsel, and the Del Grande interview transcript, fails

24   to show the result of the proceedings would have been different if trial counsel had raised the

25   juror misconduct issue in a post-trial motion. Even if trial counsel had filed post-trial motions

26   raising the issue of juror misconduct, the uncorroborated and somewhat uncertain statements

27   of one juror would not have been enough, in this Magistrate Judge's view, to meet the

28   Supreme Court's "reasonable probability" standard to warrant granting the Petition and

1    changing the result of the jury trial. Clearly, Petitioner has not shown "a reasonable
2    probability that, but for counsel's unprofessional errors, the result of the proceeding would
3    have been different." *See Strickland*, 466 U.S. at 694. Moreover, Petitioner presents nothing
4    to show that any additional evidence, beyond what was presented in post-conviction
5    proceedings, would have been submitted in post-trial motions.

6          Additionally, as discussed in Ground One above, the standard in a habeas case
7    requires the Court to go beyond a *de novo* application of *Strickland* and find that the State
8    courts' denial of Petitioner's claim was objectively unreasonable. *See Bell*, 535 U.S. at 698-
9    99. As discussion herein demonstrates, there is a reasonable basis to conclude the prejudice
10   prong of *Strickland* was not satisfied. Consequently, the Court finds Petitioner has not shown
11   that the State courts' rejection of his ineffective assistance of counsel claim pertaining to the
12   failure to raise the juror misconduct issue in Petitioner's post-trial motions was contrary to,
13   or an unreasonable application of, *Strickland*. The undersigned will, therefore, recommend
14   that the claim in Ground Four be denied.

15         **5. Evidentiary Hearing**

16         As noted above, Petitioner has requested that the District Court grant an evidentiary
17   hearing "at which proof may be offered concerning the allegations in this Petition." (Doc. 1
18   at 19)  However, "[b]ecause a federal court may not independently review the merits of a
19   state court decision without first applying the AEDPA standards, a federal court may not
20   grant an evidentiary hearing without first determining whether the state court's decision was
21   an unreasonable determination of the facts." *Earp v. Ornoski*, 431 F.3d 1158, 1166-1167 (9th
22   Cir. 2005); *see also Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011) (review under §
23   2254(d)(1) of whether a state court's decision was contrary to, or an unreasonable application
24   of, established federal law is limited to the record that was before the state court that
25   adjudicated the claim on the merits). As the above analysis demonstrates, this Magistrate
26   Judge has not determined the State courts' decisions were based on an unreasonable
27   determination of the facts. Accordingly, Petitioner is not entitled to an evidentiary hearing.

28

1     **C. Conclusion**

2         For the foregoing reasons, this Magistrate Judge finds none of Petitioner's claims in

3   Grounds One, Two, Three and Four of the Petition satisfy the standards for habeas relief

4   under 28 U.S.C. §§ 2254(d)(1), (2). Accordingly, the undersigned will recommend that the

5   Petition be denied.

6         **IT IS RECOMMENDED** that the Petition for Writ of Habeas Corpus pursuant to 28

7   U.S.C. § 2254, doc. 1, be **DENIED**;

8         **IT IS FURTHER RECOMMENDED** that a Certificate of Appealability and leave

9   to proceed *in forma pauperis* on appeal be **DENIED** because the dismissal of the Petition is

10  justified as Petitioner has not made a substantial showing of the denial of a constitutional

11  right.

12        This recommendation is not an order that is immediately appealable to the Ninth

13  Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of

14  Appellate Procedure, must not be filed until entry of the District Court's judgment. The

15  parties have 14 days from the date of service of a copy of this recommendation within which

16  to file specific written objections with the Court. *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P.

17  6(a), (b), and 72. Thereafter, the parties have 14 days within which to file a response to the

18  objections. Failure to timely file objections to the Magistrate Judge's Report and

19  Recommendation may result in the acceptance of the Report and Recommendation by the

20  district court without further review. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121

21  (9th Cir. 2003). Failure to timely file objections to any factual determinations of the

22  undersigned Magistrate Judge will be considered a waiver of a party's right to appellate

23  review of the findings of fact in an order of judgement entered pursuant to the Magistrate

24  Judge's recommendation. *See* Fed.R.Civ.P. 72.

25        Dated this 17th day of July, 2013.

26

27

28

Lawrence O. Anderson
United States Magistrate Judge